UNITED STATES of America,
Plaintiff,

v.

Ashley Rose WALKER, Defendant.

Case No. 2:10–cr–32.

United States District Court,
W.D. Michigan,
Northern Division.

Feb. 11, 2011.

Maarten Vermaat, Marquette, MI, for Plaintiff.

Paul A. Peterson, Marquette, MI, for Defendant.

### OPINION

ROBERT HOLMES BELL, District Judge.

This matter is before the Court on Defendant's objections, (Dkt. No. 26), to Magistrate Judge Greeley's January 7, 2011, Report and Recommendation ("R & R"). (Dkt. No. 25.) In the R & R, the Magis-

trate Judge recommends that Defendant's Motion to Suppress Evidence, (Dkt. No. 13), be denied. The Court is required to review *de novo* those portions of the R & R to which specific objections are made. 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.* For the reasons which follow, Defendant's objections will be overruled, and the R & R will be approved and adopted as the opinion of the Court.

### I. Background

Defendant does not dispute the Magistrate Judge's factual findings—indeed, it appears that at least with respect to Defendant's motion to suppress, the facts of this case are not contested. Officers of the Upper Peninsula Substance Enforcement Team ("UPSET") first learned about Defendant in July 2009, after receiving tips from alleged co-conspirators. (R & R 1.) Thereafter, UPSET officers made a controlled buy of crack cocaine from Defendant. (*Id.*) After the controlled buy, but without a warrant, officers placed a Guardian 811 Global Positional System ("GPS") tracking device on Defendant's vehicle. (*Id.*) The GPS device was removed, then reattached on three separate occasions. (*Id.* at 1–2) The Magistrate Judge found, and Defendant does not contest, that the GPS device was placed on her vehicle when it was in parking lots open to the public. (*Id.* at 2.) During this period, UPSET officers also received eight to ten tips that Defendant was trafficking in cocaine and made two additional controlled buys from Defendant. (*Id.*)

The GPS device used in this case has a "live track" feature which allows the device to be tracked in real time. (*Id.* at 2 n. 1.) When live track is activated, the device makes regular reports on its location and on its speed and direction of travel via an integrated cellular device. However, live

track was not used extensively in this case, as it quickly reduces the device's battery life. (*Id.* at 2.) Rather, the officers made use of a feature that allows the device to report its location when it crosses a "fence"—a preset virtual perimeter for a geographic area. (*Id.*) Officers believed that Defendant was purchasing crack cocaine from a source in Chicago. (*Id.*) On July 27, 2010, UPSET officers received text messages indicating that Defendant's vehicle had crossed a "fence" north of Chicago, and they confirmed that the vehicle was northbound. (Dkt. No. 20, Response to Motion to Suppress 7.) The officers obtained a warrant to search Defendant's vehicle and apartment. (*Id.*) The officers then positioned themselves along the route back to Defendant's home and were able to stop her vehicle in western Marquette County, Michigan. (R & R 3.) A search of the vehicle turned up two ounces of crack cocaine and one half pound of marijuana. (*Id.*) A search of Defendant's apartment turned up scales, packaging material, and other evidence of drug trafficking. (*Id.*) Defendant was advised of, and waived, her Miranda rights, and she admitted her involvement in drug trafficking. (*Id.*)

Defendant moved to suppress that evidence, and the Magistrate Judge recommends that this Court deny her motion. Defendant now objects to the R & R, asserting that the evidence was the fruit of a poisonous tree—she alleges that the warrantless placement and monitoring of the GPS device constituted an unconstitutional search and seizure under the Fourth Amendment. (Objections ¶ 6.) Defendant also asserts for the first time in her Objections that GPS monitoring of Defendant's vehicle violates the constitution by its alleged "chilling effect" on her exercise of her First Amendment Rights. (*Id.* at ¶ 20.)

## II. Discussion

### A.) Fourth Amendment Search

The Magistrate Judge recommends that this Court join the Supreme Court in holding that "what a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection," *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and find that Defendant knowingly exposed her vehicle's location to the public when she drove on public roads. (R & R 7, 9.) The Court is inclined to agree and will deny Defendant's objections regarding a Fourth Amendment search on that basis.

■■■ That said, the Court acknowledges that this is a contentious issue regarding which there have been great differences of opinion among the federal courts. The starting point for all such analyses must lie in the Fourth Amendment, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

There is nothing in the text of the Amendment which would positively require a warrant in order to make a search, nor indeed is there even a requirement of probable cause so long as the search is not "unreasonable," but the Amendment does require probable cause for a warrant to issue, and the Supreme Court has long presumed that a warrant is required for a search to be reasonable. *See United States v. Leon*, 468 U.S. 897, 913–14, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Thus, warrantless searches are presumptively unreasonable. *See Mincey v. Arizona*, 437 U.S. 385, 390,

98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). There are, however, a great many exceptions to this rule in which warrantless searches are deemed "reasonable" and thus quite acceptable. *See, e.g., Draper v. United States,* 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In a great many of these cases, not even probable cause is required to make a search reasonable. *See, e.g., Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (random drug testing of student athletes); *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (search of a probationer's home); *New York v. Burger,* 482 U.S. 691, 699–703, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (search of the premises of certain highly regulated businesses); *Skinner v. Ry. Labor Execs.' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (drug and alcohol testing of railway employees). Often, the less stringent standard of "reasonable suspicion" applies. *See Terry v. Ohio,* 392 U.S. 1, 37, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Douglas, J., dissenting). Of course, if there is no search and no seizure (and no warrant issued), the Fourth Amendment does not require the application of any standards or requirements, even the overarching standard of reasonableness, because the protections of the Fourth Amendment are not triggered.

 "A 'search' occurs 'when an expectation of privacy that society is prepared to consider reasonable is infringed.'" *United States v. Karo,* 468 U.S. 705, 712, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). This standard breaks down into two discrete inquiries: "first, has the [defendant] manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo,* 476 U.S. 207,

211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)). A reasonable expectation of privacy may be affected by a number of factors, and although the Fourth Amendment protects people, not places, the question of what protection it affords those people generally requires reference to a place. *Katz,* 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring). A person's expectation of privacy, and the reasonableness of that expectation, is higher in some areas and lower in others. The level of protection offered by the Fourth Amendment corresponds to the expectation and its reasonableness—the protection is strongest in the home and diminishes progressively in increasingly public venues and activities. With respect to the interior of vehicles, because "[o]ne has a lesser expectation of privacy in a motor vehicle," "[t]he search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building.'" *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (quoting *Almeida–Sanchez v. United States,* 413 U.S. 266, 279, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (Powell, J., concurring)). The exterior of a vehicle has less protection still. *See United States v. Rascon–Ortiz,* 994 F.2d 749, 754 (10th Cir. 1993) ("The undercarriage is part of 'the car's exterior, and as such, is not afforded a reasonable expectation of privacy."). And, as noted above, what remains a steadfastly cardinal rule in a universe of varying expectations is that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz,* 389 U.S. at 351, 88 S.Ct. 507.

As Defendant notes in her objections, the Supreme Court has not yet considered whether GPS monitoring of a vehicle's location constitutes a Fourth Amendment

search, but several circuit courts have and are split on the issue. (Objections ¶ 11.) Defendant relies on a recent decision by the Court of Appeals for the District of Columbia Circuit holding that prolonged GPS monitoring—24 hours a day for four weeks—was a Fourth Amendment search and was unreasonable without a warrant. *United States v. Maynard,* 615 F.3d 544 (D.C.Cir.2010). It appears, however, that the great weight of the law from other federal circuits rejects this view. *See United States v. Garcia,* 474 F.3d 994 (7th Cir.2007) (holding that GPS tracking is not a search); *United States v. Pineda–Moreno,* 591 F.3d 1212, 1217 (9th Cir.2010) ("We conclude that the police did not conduct an impermissible search of [defendant's] car by monitoring its location with mobile tracking devices."), *reh'g en banc denied* 617 F.3d 1120 (9th Cir.2010); *see also United States v. Sparks,* 750 F.Supp.2d 384, 396 (D.Mass.2010) ("[N]o warrant or other court order is necessary to install or monitor the GPS."); *Morton v. Nassau County Police Dep't,* No. 05–CV–4000, 2007 WL 4264569, at *4, 2007 U.S. Dist. LEXIS 87558, at *10 (E.D.N.Y. Nov. 27, 2007) ("[T]he use of the GPS Device was not an unreasonable search or seizure in violation of the Fourth Amendment."); *United States v. Jesus–Nunez,* No. 1:10–CR–00017, 2010 WL 2991229, at *5, 2010 U.S. Dist. LEXIS 76107, at *12 (M.D.Pa. July 27, 2010) ("[T]here was no Fourth Amendment search or seizure by the Government's use of the GPS device."); *United States v. Williams,* 650 F.Supp.2d 633, 668 (W.D.Ky.2009) ("[T]he Court is comfortable in concluding that no search warrant or other court order was required to permit the officers to lawfully attach the electronic tracking devices to the exterior of [defendants'] automobiles."); *United States v. Burton,* 698 F.Supp.2d 1303, 1307 (N.D.Fla.2010) ("There is no Fourth Amendment violation for using a tracking device ... where the substitute is for an activity, namely following a car on a public street, that is unequivocally not a search within the meaning of the amendment." (internal quotation marks omitted)).

These courts have generally recognized *United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), as controlling. In *Knotts,* narcotics officers placed a "beeper"—a radio tracking device—into a five gallon drum of chloroform intended for purchase by one of the codefendants. *Id.* at 278, 103 S.Ct. 1081. When the target did, in fact, purchase the drum and place it in his vehicle, officers began following him back to his destination. *Id.* The target realized he was being followed and successfully evaded the officer. *Id.* Thereafter, the officers relied exclusively on the tracking device as located by helicopter. *Id.* In holding that tracking the container was not a Fourth Amendment search, the Court noted that:

> A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When [defendant] traveled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property....

> Visual surveillance from public places along [defendant's] route ... would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but also on the use of the beeper to signal the presence of [defendant's] automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.

*Id.* at 281–82, 103 S.Ct. 1081.[1] On its face, this opinion would seem to apply directly to the facts of the present case.

Nonetheless, Defendant offers several reasons in her objections why she believes the reasoning of *Knotts* should not apply to her. She argues first that the beeper was not on the vehicle itself and that "[t]he defendant[ ] had, in some ways, opened [himself] up to receiving materials with which someone had tampered." (Objections ¶ 26.) The Court finds this attempt to distinguish Defendant's facts unconvincing. Defendant does not argue that the officers were conducting an illegal search when the GPS device was attached. Indeed, at least insofar as it affects a search claim, the mechanism by which the GPS device was attached to Defendant's property seems to be of little moment.[2] Here, as in *Knotts*, investigating officers engineered an effective mechanism by which they could attach a device to the vehicle. The rationale of *Knotts* would be little altered if the beeper had been placed on the defendant's vehicle rather than in a drum of chloroform which the officers arranged to sell to the defendant. This objection will be overruled.

Defendant also objects that the R & R emphasizes that the GPS device was used on public highways and "overlooks the fact that people seldom drive only on public highways." (Objection ¶ 29.) This emphasis is appropriate. While monitoring the location of the vehicle entering a private garage may very well be a violation of the privacy protected by the Fourth Amendment, *see Karo,* 468 U.S. 705, 104 S.Ct. 3296, the Magistrate Judge appropri-

ately noted that this did not happen here. Here, there is no evidence, and Defendant does not even allege, that the officers used the GPS device to monitor her location anywhere other than public thoroughfares. To the extent that Defendant is concerned about *potential* privacy violations, (*see* Objections ¶ 29 ("What happens when the subject turns into the private driveway, onto the curtilage of a house, and pulls behind a fence where the public cannot see the car?")), her concern is not shared by the Fourth Amendment. The Fourth Amendment does not protect against unreasonable potential invasions of privacy, it protects against actual invasions of privacy. *See Dow Chem. Co. v. United States,* 476 U.S. 227, 239, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986) ("Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations. '[We] have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.'" (quoting *Karo,* 468 U.S. at 712, 104 S.Ct. 3296)). This objection, too, will be overruled.

Finally, Defendant objects that *Knotts* can be distinguished by the technological differences between *Knotts* 's beeper and the GPS device used here. (Objections ¶ 30.) Indeed, the level of technology employed in surveillance has been a concern of the Supreme Court. In *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), the Supreme Court held that the warrantless use of a thermal imager to measure the relative heat of a home's exterior walls constituted an unreasonable search. In part, the Court based its decision on the level of technology employed: "[w]e think that obtaining by

---

1. It is notable that in *Knotts,* the visual surveillance which the Supreme Court said would have sufficed to replicate the information supplied by the beeper would not only have been difficult, but, as revealed by the facts of the case, it was demonstrably impossible. *Id.* at 278, 103 S.Ct. 1081.

2. This mechanism is more relevant to Defendant's separately-addressed allegation of illegal seizure under the Fourth Amendment.

sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area constitutes a search—at least where (as here) the technology in question is not in general public use." 533 U.S. at 34, 121 S.Ct. 2038 (citation and internal quotation marks omitted).

While this Court certainly does not contest the holding in *Kyllo*, the holding does not preclude the use of GPS as officers employed it here. Though it is true that some courts have focused on the level of technology employed,[3] the technology in and of itself does not appear to have been the Supreme Court's main concern in *Kyllo*. Rather, it was the intrusion into the privacy of the home which troubled the Court. Here, the technology employed did not reveal information that could not otherwise have been obtained without physical intrusion into a constitutionally protected area—it revealed information (the location of a vehicle on public roads) that could have been readily obtained by visual surveillance of a public area. *See Morton*, 2007 WL 4264569, at *3, 2007 U.S. Dist. LEXIS 87558, at *8–9 ("The use of the GPS Device did not permit the discovery of any information that could not have obtained by following an automobile traveling on public roads, either physically or through visual surveillance."); *United States v. Dantzler*, No. 10–0024, 2010 WL 2740003, at *6, 2010 U.S. Dist. LEXIS 68753, at *18 (W.D.La. June 16, 2010) ("The OnStar system revealed no more information than what law enforcement officers could have observed from constant surveillance of the vehicle."); *Jesus–Nunez*, 2010 WL 2991229, at *4, 2010 U.S. Dist. LEXIS 76107, at *9 ("[N]o such extra-sensory enhancements [as those in *Kyllo* ] are implicated here.").

 Moreover, the Supreme Court explicitly limited its holding to technologies which are not in general use. Defendant notes that one of the officers in this case "was not sure" if GPS devices with live tracking capabilities are available to the public. In dissenting to a denial of rehearing en banc in *Pineda–Moreno*, Judge Kozinski has indicated that such devices are readily available to the public—in fact, he directs the reader to a website that sells them. 617 F.3d at 1126 ("Acting together [GPS satellites and cell towers] can provide law enforcement with a swift, efficient, silent, invisible and cheap way of tracking ... movements.... *See, e.g.*, GPS Mini Tracker with Cell Phone Assist Tracker, http://www.spyville.com/passive-gps.html (last visited July 17, 2010)." (emphasis omitted)).[4] Indeed, the prevalence of GPS-enabled cellular telephones ensures that a great many Americans are walking around with such technology in their pockets and handbags. *See In re Application of the United States of America*, 727 F.Supp.2d 571, 580 (W.D.Tex.2010) ("Estimates from three years ago were that over

---

**3.** This focus appears to be particularly prevalent in state courts applying *Kyllo* to their own constitutions which generally appear to provide broader protections than the Constitution of the United States. *See, e.g., State v. Jackson*, 150 Wash.2d 251, 76 P.3d 217, 223 (Wash.2003) (Washington Constitution); *Commonwealth v. Connolly*, 454 Mass. 808, 913 N.E.2d 356, 369 (2009) (Massachusetts Constitution); *People v. Weaver*, 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195, 1199 (N.Y.2009) (New York Constitution);

*State v. Holden*, No. 1002012520, 2010 WL 5140744, at *7, 2010 Del.Super. LEXIS 493, at *24–25 (Del.Super.Ct. Dec. 14, 2010) (Delaware Constitution).

**4.** In fact, this website sells a number of live GPS tracking systems, including some which appear to be more advanced than the one at issue here. *See* GPS Tracking System, http://www.spyville.com/gps-unit.html (last visited February 9, 2011).

90% of cell phones then in use had GPS capabilities, through which the target phone could be located to within as little as 50 feet."). These are in general use and are used for any number of purposes. *See, e.g., id.* (emergency care providers use GPS-enabled phones to pinpoint 911 calls and owners use GPS to locate lost phones); *Vehicle IP, LLC v. Gen. Motors Corp.*, 578 F.Supp.2d 1107, 1112 (W.D.Wis.2008) (software allows GPS-enabled cell phones to receive turn-by-turn driving directions); *Rico v. Davis Bancorp, Inc.*, No. 08 C 2721, 2009 WL 5064807, at *1–2, 2009 U.S. Dist. LEXIS 117082, at *3–4 (N.D.Ill. Dec. 16, 2009) (shipping company uses GPS-enabled cell phones to track their trucks and communicate with their drivers); *United States v. Hinckley*, 625 F.Supp.2d 3, 27 (D.D.C.2009) (hospital requires a patient to carry a GPS-enabled cell phone so that they can track his movements upon release); *Richmond v. State*, No. 49A02–1004–CR–449, 2010 WL 5387457, at *1–2, 2010 Ind.App. Unpub. LEXIS 1793, at *3–4 (Ind.Ct.App. Dec. 21, 2010) (theft victim uses GPS-enabling to track his stolen phone). That the officers here chose to use a specifically engineered GPS tracking device rather than merely duct-taping an iPhone to Defendant's bumper is of little moment. The technology in this case is in general use, and it was not used to acquire any information that could not otherwise have been obtained without physical intrusion into a constitutionally protected area. The objection will be overruled.

Defendant warns that allowing warrantless GPS monitoring of vehicles might lead to "shotgun" tactics: placing a GPS unit on any number of cars, then waiting to see which device leads to evidence of a potential criminal violation. (Objections ¶ 24.) While such tactics would perhaps be troubling, the Upper Peninsula Substance Enforcement Team has shown neither the inclination nor the capability to employ such tactics, and they certainly did not employ them here. As noted above, the Supreme Court has "never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment." *Karo*, 468 U.S. at 712, 104 S.Ct. 3296. When faced with a similar challenge, the Seventh Circuit stated that "[i]t would be premature to rule that such a program of mass surveillance could not possibly raise a question under the Fourth Amendment." *Garcia*, 474 F.3d at 998. This Court agrees. "[T]he reality hardly suggests abuse; if such dragnet-type law enforcement practices as [Defendant] envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *Knotts*, 460 U.S. at 283–84, 103 S.Ct. 1081 (citation and internal quotation marks omitted). This objection, too, will be overruled.

As an alternative to warrantless GPS monitoring, Defendant proposes that "[a]t a time when the Supreme Court has not yet ruled on this issue, it seems best to err on the side of at least minimal judicial oversight. The reasonable-suspicion standard would afford such protection and would conform with similar past decisions by the Supreme Court." (Objections ¶ 19.) The reasonable suspicion standard has been deemed an acceptable basis for GPS monitoring of a vehicle by the Eighth Circuit: "when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time." [56] *United States v. Marquez,*

---

**5.** Notably, this opinion does not *require* reasonable suspicion. It merely states that when the police have reasonable suspicion, a warrant is not required. *Id.*

**6.** Notably, too, the "reasonable period of

605 F.3d 604, 610 (8th Cir.2010). Here, the officers certainly had reasonable suspicion (and very likely even probable cause) to believe that both Defendant and her vehicle were engaged in the trade of illegal drugs—they had purchased crack cocaine from Defendant before they installed the GPS device on her vehicle.

But Defendant has presented no authority, and the Court cannot locate any, to suggest that reasonable suspicion would be a proper standard to apply even if this Court were to require judicial oversight. When investigating officers approach a judge for permission to pursue an action, the writ they receive is a warrant. The issuance of a warrant upon reasonable suspicion (without more) would be unconstitutional, *see* U.S. Const. amend IV ("[N]o Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (emphasis added)), and issuance of any other writ would, as far as this Court can determine, be unprecedented.[7] The Court would decline to expand the role of the judiciary in such a manner even if constitutionally permitted to do so. Insofar as this is an objection, it will be overruled.

### B.) Fourth Amendment Seizure

 In recommending that Defendant's motion be denied, the Magistrate Judge also recommends that this Court find that Defendant's vehicle was not illegally seized.[8] "A 'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property." *Karo,* 468 U.S. at 712, 104 S.Ct. 3296 (quoting *Jacobsen,* 466 U.S. at 113, 104 S.Ct. 1652). In her objections, Defendant argues that officers seized her car by attaching the GPS device to her bumper; that they interfered with her property interest by modifying her vehicle without her permission. (Objections ¶ 15–18.)

 This argument confuses the law of trespass with the protections of the Fourth Amendment. "[T]he law of trespass confers protections from intrusion by others far broader than those required by Fourth Amendment"—"trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest." *Oliver v. United States,* 466 U.S. 170, 183 n. 15 and 183, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *see also Karo,* 468 U.S. at 712–13, 104 S.Ct. 3296 ("The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation.") Here, as in *Karo,* although the officers may have added to Defendant's property "an unknown and unwanted foreign object, it cannot be said that anyone's possessory interest was interfered with in a meaningful way. At most, there was a technical trespass on the space occupied by the [de-

---

time" described in this opinion appears to have been five months. *See id.* at 607 (GPS device installed in May 2007 and monitored until October 2007, with seven battery changes).

**7.** And possibly also unconstitutional, insofar as it could be deemed a workaround to a warrant issued upon probable cause.

**8.** It appears from her Memorandum in Support of Motion to Suppress, (Dkt. No. 18),

that the only seizure argument raised by Defendant was that her vehicle was illegally seized as the fruit of the poisonous tree of an illegal search. In her objections, Defendant emphasizes an argument that the placement of the GPS device was itself an illegal seizure. For the purposes of this discussion, the Court will assume that this issue was properly raised in the motion.

vice]." *Id.* at 712, 104 S.Ct. 3296. " '[One] may reasonably expect that strangers will leave his car alone, but that is not an expectation of privacy.' " *Sparks,* 750 F.Supp.2d at 391 (quoting *People v. Weaver,* 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195 (2009) (Smith, J., dissenting)). As the Seventh Circuit said in *Garcia,*

> The defendant's contention that by attaching the memory tracking device the police seized his car is untenable. The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by passengers or packages, did not even alter the car's appearance, and in short did not "seize" the car in any intelligible sense of the word.

474 F.3d at 996.

 Defendant also contends that this must be a seizure under the Fourth Amendment because "[p]olice officers attempting to install a device could damage the vehicle.... Cosmetic damage can diminish a car's resale value, and installing devices could easily cause scratches and dents." (Objections ¶ 17.) Defendant does not allege that any such damage occurred here, and as noted several times previously, this Court will not find a violation of the Fourth Amendment where the only infraction is hypothetical. *See Dow Chem. Co.,* 476 U.S. at 239, 106 S.Ct. 1819. Even if such minor damage had occurred and had occurred without the officers securing a warrant, it is by no means certain

that that damage would create a Fourth Amendment violation. *See Cardwell,* 417 U.S. 583, 94 S.Ct. 2464 (no Fourth Amendment unreasonable search and seizure in removing paint scrapings from a parked car). These objections will be overruled.

### C.) First Amendment "Chilling Effect"

 Defendant now raises, for the first time in her objections, the argument that police use of GPS monitoring could also "effectively chill a person's First Amendment freedoms." [9] (Objections ¶ 20.) This argument is not contained in her motion, her memorandum in support of her motion, and, in short, was never presented to the Magistrate Judge in any way. It has been held in many courts, including this one, that the Magistrate Judge Act does not allow parties to raise at the district court stage new arguments or issues that were not presented to the Magistrate Judge, and, indeed, allowing such arguments would frustrate the purpose of the Magistrate Judge Act. *See, e.g., Senior v. Hofbauer,* No. 2:08–cv–88, 2010 WL 4684018, at *1–2, 2010 U.S. Dist. LEXIS 119522, at *5 (W.D.Mich. Nov. 10, 2010); *see also Murr v. United States,* 200 F.3d 895, 902 n. 1 (6th Cir.2000) (citing approvingly courts that have held the same). Thus, issues raised for the first time in objections to an R & R are deemed waived. *See Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988) (holding that "an unsuccessful party is not entitled

---

**9.** It is possible that Defendant was attempting to argue that chilling effects on the exercise of First Amendment freedoms also implicate the Fourth Amendment right to be free of unreasonable searches and seizures. (*See* Objections ¶ 20 ("Police use of GPS monitoring also violates an individual's privacy interests by violating a person's First Amendment rights ...."; "a 'chilling effect' would deter most people from uninhibitedly using their vehicle and, thereby, effectively interfering

with their possessory interests in the vehicle.").) To the extent that Defendant is so arguing, she has not offered, and the Court is not aware, of any authority to indicate that suppressing a First Amendment freedom constitutes a Fourth Amendment search or seizure. The Court would decline to so greatly expand the Fourth Amendment. In any case, as indicated herein, Defendant has not alleged any actual First Amendment chilling here.

as of right to de novo review ... of an argument never seasonably raised before the magistrate"); *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638–39 (9th Cir.1988) ("Allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir.1992), *cert. denied*, 507 U.S. 978, 113 S.Ct. 1429, 122 L.Ed.2d 797 (1993); *and see Marshall v. Chater*, 75 F.3d 1421, 1426–1427 (10th Cir. 1996) (collecting the above and holding the same).

Even if this issue were not procedurally barred, Defendant has not contended that her First Amendment activities were constrained; she has only argued in the abstract that *someone's* First Amendment exercise *might* be chilled. It is, in fact, somewhat difficult to see how her activities could have been chilled—there is no evidence in the record that she was aware that her vehicle's location was being monitored. Moreover, Defendant has not provided, and the Court is not aware, of any authority to indicate that suppression of evidence is an appropriate remedy for First Amendment violations. Inasmuch as this is an original argument before this Court, it is procedurally barred, and even if it were a proper objection to the R & R, it would be overruled.

### D.) Other Matters

With regard to the sections of the R & R not specifically objected to, the Court has reviewed the matters and concludes that the R & R correctly analyzes the issues and makes a sound recommendation.

### III. Conclusion

Defendant warns that the age of Big Brother is upon us. (Objections ¶ 31.) As long as Big Brother contents himself to observe us, or rather, not us but our vehicles (and not even our vehicles *per se*, but only our vehicles' locations), as those vehicles traverse public and publically observable roads, the Court remains untroubled. There being no search, no seizure, and no chilling effect on the exercise of Defendant's First Amendment freedoms, the Court holds that the Constitution is likewise untroubled. The objections will be denied. An order consistent with this opinion will be entered.

### *REPORT AND RECOMMENDATION*

TIMOTHY P. GREELEY, United States Magistrate Judge.

Defendant Ashley Rose Walker has filed a motion to suppress evidence seized as the fruit of an alleged unlawful search and seizure. Defendant argues that her Fourth Amendment rights were violated when Upper Peninsula Substance Enforcement Team (UPSET) officers placed a Global Positional System (GPS) device on her vehicle to track her movements without first obtaining a search warrant. A hearing was held on December 17, 2010. Testifying at the hearing were Detective Mark Hanes, Detective Trooper Jim Maki, and defendant Ashley Walker.

UPSET officers first learned about defendant in July 2009, after receiving tips from alleged co-conspirators. Thereafter, UPSET officers made four controlled buys of crack cocaine from defendant. One buy occurred in October 2009, one buy occurred in January 2010, and two buys occurred on February 1, 2010. After the first controlled buy, a Guardian 811 GPS tracking unit was placed on defendant's vehicle.[1] This occurred on four separate

---

1. The Guardian 811 is a GPS unit with a cell phone antenna. The unit was powered by battery in this case. Installation is by "slap on" and is held in place by magnets. The battery can be placed on the vehicle separate-

occasions, in November 2009, December, 2009, March 2010 and July 2010. In addition, the UPSET officers conducted visual surveillance of defendant on numerous occasions. During the course of their investigation, UPSET received eight to ten tips that defendant was trafficking in cocaine. The installation of the GPS unit on defendant's vehicle occurred in parking lots open to the public.

The GPS tracking device was placed on the bumper of defendant's 1999 GMC Yukon. During all four installations of the GPS unit, UPSET officers learned that the vehicle traveled to Chicago. Live track was not used extensively while the GPS was on defendant's vehicle. The "live track" was used when a "fence" was broken. Chicago was believed to be where defendant was purchasing cocaine. The GPS installation in July of 2010 revealed that the vehicle made a trip to Chicago. During the return trip from Chicago, defendant was stopped by police at Koski Corners in the Upper Peninsula of Michigan. Before the stop, police obtained state search warrants to search defendant's vehicle and apartment. The information learned from the GPS unit was used to support the requested warrants.

The GPS unit was used after UPSET officers concluded that defendant was aware of the physical surveillance of her vehicle. Defendant rented a vehicle in April of 2010 which was subject to physical surveillance. Defendant testified that she felt the use of the GPS unit was an invasion of her privacy. She also testified that

she felt the physical surveillance was an invasion of her privacy.

UPSET officers stopped the vehicle in Western Marquette County. The vehicle was driven to the Michigan State Police Post in Negaunee, where it was searched. Two ounces of crack cocaine and one half pound of marijuana were discovered inside the vehicle. A search of defendant's apartment revealed scales, packaging material and other drug trafficking evidence. Defendant was advised of her Miranda rights and she agreed to make a statement. Defendant admitted her involvement in drug trafficking.

Relying on *United States v. Maynard*, 615 F.3d 544 (D.C.Cir.2010), defendant maintains that use of the GPS unit was a Fourth Amendment search and was unreasonable without a warrant. Defendant also relies upon Chief Judge Kosinski's dissent in *United States v. Pineda–Moreno*, 617 F.3d 1120 (9th Cir.2010), to support her motion to suppress. Judge Kosinski explained:

> I don't think that most people in the United States would agree with the panel that someone who leaves his car parked in his driveway outside the door of his home invites people to crawl under it and attach a device that will track the vehicle's every movement and transmit that information to total strangers. There is something creepy and un-American about such clandestine and underhanded behavior. To those of us

ly, allowing the battery to be changed. Installation takes about 30 seconds. Battery life for the unit lasts one to ten days, depending on use and climate. The unit can be called using the Guardian Skytrack system. Using the "live track" system, information regarding vehicle location, speed and direction of travel can be obtained while the unit is on the vehicle. The GPS unit stores all information on where the vehicle has been and this infor-

mation can be downloaded. "Fences" can be set to notify officers when the vehicle enters or leaves an area. Use of "live track" significantly reduces battery life. "Live track" only works when the unit is in cell service range. According to Detective Hanes, GPS tracking devices, without "live track" ability, are available to the general public. Detective Hanes was not sure if GPS with "live track" was available to the public.

who have lived under a totalitarian regime, there is an eerie feeling of deja vu.

In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the court held that society would not recognize as reasonable an expectation of privacy in garbage left at the street for collection. The practice of government officials searching an individual's garbage on a daily basis is no less "creepy" or "un-American" than the use of a GPS unit to track a vehicle traveling the public roadways. Creepiness does not render observation by law enforcement officials of something in public view a Fourth Amendment search.

In *United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), the Eighth Circuit overturned a conviction for conspiracy to manufacture controlled substances because the investigators used a radio control beeper to monitor a container of chemicals transported by the defendant. On appeal the United States Supreme Court reversed the circuit court, finding that a beeper placed in the container of chemicals that was transported to the defendant's cabin was not a Fourth Amendment search or seizure because there existed no reasonable expectation of privacy in the transportation of the chemicals.

Law enforcement officers placed a beeper in a five gallon drum of chloroform purchased by one of the co-defendants. The officers were able to trace the chloroform from its point of purchase in Minneapolis to a cabin near Shell Lake, Wisconsin. Officers followed the vehicle driven by one of the defendants that contained the chloroform. The officers lost the vehicle but were able to find the location of the vehicle with the monitoring device. The vehicle was located at the cabin. Officers continued surveillance of the cabin and ultimately secured a search warrant, the execution of which led to the discovery of a methamphetamine laboratory within the cabin.

In order to violate the Fourth Amendment the person invoking its protection must be able to claim a justifiable, reasonable or a legitimate expectation of privacy that was breached by a governmental action. The court found no "expectation of privacy" extended to the visual observation of [the] automobile arriving on his premises after leaving a public highway, nor to movements of objects such as a drum of chloroform outside the cabin in the "open fields." *Id.* at 282, 103 S.Ct. 1081.

Further, the use of the beeper to signal the presence of the automobile combined with visual surveillance from public places along the transportation route did not violate the Fourth Amendment. "Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case. The court noted that when the government uses enhanced technology for surveillance purposes, it risks pushing "into the private sphere protected by the Fourth Amendment." For instance, if the surveillance continues beyond that which is public and into the private residence, the surveillance that occurred where the expectation of privacy is legitimate would be considered unlawful.

In *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), the government obtained a court order authorizing the placement of a monitoring device on cans of ether ordered by defendants. One of the defendants picked up the can of ether and DEA agents were able to determine that the can was inside a house. The ether was moved to two different houses before it was placed inside a locker in a commercial storage facility and then again moved to another storage facility. The agents then learned that the beeper was inside a house and obtained a search warrant to search the house based

in part on the information from the beeper. The defendants were arrested and cocaine was seized. The Supreme Court concluded that there was no Fourth Amendment interest to be free from the initial placement of the beeper because no privacy concerns were infringed. However, the monitoring of the beeper inside the private residence that is not open to visual surveillance violated the Fourth Amendment rights of anyone who had a reasonable expectation of privacy in the residence. In that case, however, because there was sufficient untainted evidence to establish that the ether was located inside the house, the evidence was not suppressed. The location of the beeper inside the storage facility did not raise Fourth Amendment concerns and because the officers witnessed the ether moved from storage to the inside of a truck, which traveled the highways, there were no Fourth Amendment concerns implicated in that case.

Simply on the face of these two Supreme Court cases, it appears that GPS monitoring of a vehicle, where the monitor was placed on the vehicle when located in a public place and monitored while moving along the public highway system, does not implicate Fourth Amendment privacy concerns. However, defendant argues that the case of *United States v. Maynard*, 615 F.3d 544 (D.C.Cir.2010), supports the position that the evidence must be suppressed.

In that case, the defendants moved to suppress evidence obtained for a number of reasons, including the placement of a GPS device on one of the defendant's vehicles. The police tracked the defendant's vehicle with a GPS device 24 hours a day over a four week period. This, according to the circuit court, distinguished the facts from *Knotts* which left open the question of whether prolonged 24–hour surveillance

without a warrant was constitutional. It was recognized that two other circuit courts held that the use of GPS tracking devices to monitor the movement of a vehicle over a prolonged period did not violate the Fourth Amendment. *United States v. PinedaMoreno*, 591 F.3d 1212 (9th Cir. 2010), and *United States v. Garcia*, 474 F.3d 994 (7th Cir.2007). The DC Circuit distinguishes those holdings because the defendants did not contest whether the "prolonged surveillance is a search" in those cases.

Further, the DC Circuit found that the entire course of defendant's movements over the month long surveillance period was not actually exposed to the public because of the likelihood that all of the defendant's movements would not have been observed. As further support, the court stated that a reasonable person would not expect to be watched in public for 24 hours a day over the course of a month. The court found the existence of a reasonable expectation of privacy in an individual's movements in a vehicle over the course of month. The court found that the placement of the GPS tracking device violated the Fourth Amendment interests in that privacy and is unconstitutional without a warrant.

In this case, the GPS tracking device was placed on defendant's vehicle on four separate occasions.[2] The GPS tracking device was not continually monitored by UPSET or DEA agents. The device was placed on defendant's vehicle while the vehicle was parked in a public location and was used while defendant was on public highways.

In *United States v. Sparks*, 750 F.Supp.2d 384 (D.Mass.2010) (unpublished) (attached), the Court faced a simi-

**2.** The GPS unit was placed on defendant's vehicle from November 9–22, 2009; December 7–15, 2009; March 4–April 13, 2010 (with three battery changes), and July 21–27, 2010.

lar motion to suppress. That decision comprehensively addresses the questions presented in this case. That decision is persuasive and likely cannot be improved upon by the undersigned.

The Supreme Court has long recognized that "what a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Defendant Walker's movements in her vehicle were knowingly exposed to the public. Law enforcement officers could have observed her by physical surveillance without implicating the Fourth Amendment. Use of technology to enhance or improve the surveillance of what an individual exposes to the public does not implicate the Fourth Amendment. In *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), Ciraolo had erected a 10-foot fence to conceal a marijuana crop in his backyard. Law enforcement used planes to fly over Ciraolo's property to observe the marijuana. The use of the plane did not turn the observation into a Fourth Amendment search. *See also Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989); *Dow Chemical Co. v. United States*, 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986).

In *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), police officers put a wire on an informant to record conversations the informant had with White in White's home. The wire was used to transmit and record conversations between White and the informant. White challenged the use of the wire as a warrantless Fourth Amendment search. The Court explained:

It is thus untenable to consider the activities and reports of the police agent himself, though acting without a warrant, to be a "reasonable" investigative effort and lawful under the Fourth Amendment but to view the same agent

with a recorder or transmitter as conducting an "unreasonable" and unconstitutional search and seizure. Our opinion is currently shared by Congress and the Executive Branch, Title III, Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 212.

*Id.* at 753, 91 S.Ct. 1122.

In *United States v. Cervantes–Garcia*, 940 F.2d 1536, 1991 WL 144508, at *1 (9th Cir.1991) (unpublished) (attached), the Court explained:

In *Dow Chemical v. United States*, 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986), the Court held that the government had not conducted a "search" under the Fourth Amendment when it took pictures of a facility with a "precision aerial mapping camera" at various altitudes. 476 U.S. at 229[, 106 S.Ct. 1819]. The Court noted, however, that "highly sophisticated surveillance equipment not generally available to the public, *such as satellite technology, might be constitutionally proscribed* absent a warrant." *Id.* (emphasis added).

We believe that aerial surveillance with gyroscopic binoculars of ordinary fourteen power does not constitute a search under the Fourth Amendment. According to the pilot's testimony, the gyroscopic binoculars "simply minimized vibrations to allow the individual using the binoculars to stay focused in one spot." Gyroscopic binoculars are not more intrusive than precision aerial mapping cameras sanctioned in *Dow Chemical* and do not pose any more of a constitutional problem. *See United States v. Allen*, 675 F.2d 1373, 1381–82 (9th Cir. 1980) (observation using ordinary binoculars does not constitute a Fourth Amendment "search"), *cert. denied*, 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981).

In *United States v. Ellison,* 462 F.3d 557 (6th Cir.2006),[3] the Court faced an assertion that running a license plate number through the LEIN system constituted a Fourth Amendment search. The Court explained:

Moreover, the computer investigation utilized in this case was far less invasive than other government actions that fall outside the protections of the Fourth Amendment. *See, e.g., Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (entering private property with "No Trespassing" signs to observe marijuana plants in an "open field" not visible from outside the property); *Dow Chemical Co. v. United States,* 476 U.S. 227, 239, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986) (photographing an industrial complex with a precision aerial mapping camera); *California v. Ciraolo,* 476 U.S. 207, 213–14, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (using aerial surveillance in public airspace to observe the curtilage of a private residence); *Smith v. Maryland,* 442 U.S. 735, 745–46, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (placing a pen register on a phone line to record the numbers dialed from a private residence). This is not a case where the police used a technology not available to the public to discover evidence that could not otherwise be obtained without "intrusion into a constitutionally-protected area." *Kyllo v. United States,* 533 U.S. 27, 34–35, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (holding that the use of thermal-imaging technology to detect heat inside a private home violates the Fourth Amendment). The technology used in this case does not allow officers to access any previously-unobtainable information; it simply allows them to access information more quickly. As the information was obtained without intruding upon a consti-

tutionally-protected area, there was no "search" for Fourth Amendment purposes.

*Id.* at 562.

Defendant knowingly exposed her vehicle to the public when she drove on public roads. The GPS unit was not used to learn of activities in defendant's house or other protected areas. Accordingly, it is respectfully recommended that defendant's Motion to Suppress Evidence (Docket # 13) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

---

**3.** The dissenting opinion in *Ellison* offers am-

ple support for defendant in this case.