In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 06-2741

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BERNARDO GARCIA,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-155-C—**Barbara B. Crabb**, *Chief Judge*.

_____

ARGUED JANUARY 10, 2007—DECIDED FEBRUARY 2, 2007

_____


Before POSNER, MANION, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant appeals from his conviction for crimes relating to the manufacture of methamphetamine. The only issue is whether evidence obtained as a result of a tracking device attached to his car should have been suppressed as the fruit of an unconstitutional search.

The defendant had served time for methamphetamine offenses. Shortly after his release from prison, a person who was a known user of meth reported to police that the defendant had brought meth to her and her husband,

consumed it with them, and told them he wanted to start manufacturing meth again. Another person told the police that the defendant had bragged that he could manufacture meth in front of a police station without being caught. A store's security video system recorded the defendant buying ingredients used in making the drug.

From someone else the police learned that the defendant was driving a borrowed Ford Tempo. They went looking for it and found it parked on a public street near where the defendant was staying. The police placed a GPS (global positioning system) "memory tracking unit" underneath the rear bumper of the Ford. Such a device, pocket-sized, battery-operated, commercially available for a couple of hundred dollars (see, e.g., Vehicle-Tracking, Incorporated, "GPS Vehicle Tracking with the Tracking Key," www.vehicle-tracking.com/products/Tracking_Key.html, visited Jan. 21, 2007), receives and stores satellite signals that indicate the device's location. So when the police later retrieved the device (presumably when the car was parked on a public street, as the defendant does not argue that the retrieval involved a trespass), they were able to learn the car's travel history since the installation of the device. One thing they learned was that the car had been traveling to a large tract of land. The officers obtained the consent of the tract's owner to search it and they did so and discovered equipment and materials used in the manufacture of meth. While the police were on the property, the defendant arrived in a car that the police searched, finding additional evidence.

The police had not obtained a warrant authorizing them to place the GPS tracker on the defendant's car. The district judge, however, found that they had had a reasonable suspicion that the defendant was engaged in

criminal activity, and she ruled that reasonable suspicion was all they needed for a lawful search, although she added that they had had probable cause as well. The defendant argues that they needed not only probable cause to believe that the search would turn up contraband or evidence of crime, but also a warrant. The government argues that they needed nothing because there was no search or seizure within the meaning of the Fourth Amendment.

The Fourth Amendment forbids unreasonable searches and seizures. There is nothing in the amendment's text to suggest that a warrant is required in order to make a search or seizure reasonable. All that the amendment says about warrants is that they must describe with particularity the object of the search or seizure and must be supported both by an oath or affirmation and by probable cause, which is understood, in the case of searches incident to criminal investigations, to mean probable cause that the search will turn up contraband or evidence of crime. *Zurcher v. Stanford Daily*, 436 U.S. 547, 554-55 (1978). The Supreme Court, however, has created a presumption that a warrant is required, unless infeasible, for a search to be reasonable. E.g., *United States v. Leon*, 468 U.S. 897, 913-14 (1984); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Henry v. United States*, 361 U.S. 98, 100 (1959); see *Nicholas v. Goord*, 430 F.3d 652, 678 (2d Cir. 2005). "Although the framers of the Fourth Amendment were more fearful that the warrant would protect the police from the citizen's tort suit through operation of the doctrine of official immunity than hopeful that the warrant would protect the citizen against the police, see [Telford] Taylor, *Two Studies in Constitutional Interpretation* 23-43 (1969), and although the effective neutrality and independ-

ence of magistrates in ex parte proceedings for the issuance of search warrants may be doubted, there is a practical reason for requiring warrants where feasible: it forces the police to make a record before the search, rather than allowing them to conduct the search without prior investigation in the expectation that if the search is fruitful a rationalization for it will not be difficult to construct, working backwards." *United States v. Mazzone*, 782 F.2d 757, 759 (7th Cir. 1986). But of course the presumption in favor of requiring a warrant, or for that matter the overarching requirement of reasonableness, does not come into play unless there is a search or seizure within the meaning of the Fourth Amendment.

The defendant's contention that by attaching the memory tracking device the police seized his car is untenable. The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by passengers or packages, did not even alter the car's appearance, and in short did not "seize" the car in any intelligible sense of the word. But was there a search? The Supreme Court has held that the mere tracking of a vehicle on public streets by means of a similar though less sophisticated device (a beeper) is not a search. *United States v. Knotts*, 460 U.S. 276, 284-85 (1983). But the Court left open the question whether installing the device in the vehicle converted the subsequent tracking into a search. *Id.* at 279 n. 2; see also *United States v. Karo*, 468 U.S. 705, 713-14 (1984). The courts of appeals have divided over the question. Compare *United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999), and *United States v. Pretzinger*, 542 F.2d 517, 520 (9th Cir. 1976) (per curiam), holding (and *United States v. Michael*, 645 F.2d 252, 256 and n. 11 (5th Cir. 1981) (en banc), and *United States v. Bernard*, 625 F.2d 854, 860-61

(9th Cir. 1980), intimating) that there is no search, with *United States v. Bailey*, 628 F.2d 938, 944-45 (6th Cir. 1980); *United States v. Shovea*, 580 F.2d 1382, 1387-88 (10th Cir. 1978), and *United States v. Moore*, 562 F.2d 106, 110-12 (1st Cir. 1977), holding the contrary. Several of the cases actually take intermediate positions, such as requiring reasonable suspicion rather than probable cause (a possible interpretation of *Michael*), or probable cause but no warrant—*Shovea* and *Moore*. This court has not spoken to the issue.

If a listening device is attached to a person's phone, or to the phone line outside the premises on which the phone is located, and phone conversations are recorded, there is a search (and it is irrelevant that there is a trespass in the first case but not the second), and a warrant is required. But if police follow a car around, or observe its route by means of cameras mounted on lampposts or of satellite imaging as in Google Earth, there is no search. Well, but the tracking in this case *was* by satellite. Instead of transmitting images, the satellite transmitted geophysical coordinates. The only difference is that in the imaging case nothing touches the vehicle, while in the case at hand the tracking device does. But it is a distinction without any practical difference.

There is a practical difference lurking here, however. It is the difference between, on the one hand, police trying to follow a car in their own car, and, on the other hand, using cameras (whether mounted on lampposts or in satellites) or GPS devices. In other words, it is the difference between the old technology—the technology of the internal combustion engine—and newer technologies (cameras are not new, of course, but coordinating the images recorded by thousands of such cameras is). But GPS

tracking is on the same side of the divide with the sur-
veillance cameras and the satellite imaging, and if what
they do is not searching in Fourth Amendment terms,
neither is GPS tracking.

This cannot be the end of the analysis, however, because
the Supreme Court has insisted, ever since *Katz v. United
States*, 389 U.S. 347 (1967), that the meaning of a Fourth
Amendment search must change to keep pace with the
march of science. So the use of a thermal imager to reveal
details of the interior of a home that could not otherwise
be discovered without a physical entry was held in *Kyllo
v. United States*, 533 U.S. 27, 34 (2001), to be a search with-
in the meaning of the Fourth Amendment. But *Kyllo* does
not help our defendant, because his case unlike *Kyllo* is
not one in which technology provides a substitute for a
form of search unequivocally governed by the Fourth
Amendment. The substitute here is for an activity, namely
following a car on a public street, that is unequivocally
*not* a search within the meaning of the amendment.

But while the defendant's efforts to distinguish the
GPS case from the satellite-imaging and lamppost-camera
cases are futile, we repeat our earlier point that there is a
difference (though it is not the difference involved in
*Kyllo*) between all three of those situations on the one
hand and following suspects around in a car on the other.
The new technologies enable, as the old (because of
expense) do not, wholesale surveillance. One can imagine
the police affixing GPS tracking devices to thousands of
cars at random, recovering the devices, and using digital
search techniques to identify suspicious driving pat-
terns. One can even imagine a law requiring all new cars
to come equipped with the device so that the govern-
ment can keep track of all vehicular movement in the

United States. It would be premature to rule that such a program of mass surveillance could not possibly raise a question under the Fourth Amendment—that it could not be a search because it would merely be an efficient alternative to hiring another 10 million police officers to tail every vehicle on the nation's roads.

Of course the amendment cannot sensibly be read to mean that police shall be no more efficient in the twenty-first century than they were in the eighteenth. *United States v. Knotts*, *supra*, 460 U.S. at 283-84. There is a tradeoff between security and privacy, and often it favors security. Even at the height of the "Warren Court," the Court held over a strong dissent by Justice Brennan that the planting of an undercover agent in a criminal gang does not become a search just because the agent has a transmitter concealed on his person, even though the invasion of privacy is greater when the suspect's words are recorded and not merely recollected. *Lopez v. United States*, 373 U.S. 427, 439 (1963).

Yet Chief Justice Warren, while concurring in the judgment in *Lopez*, remarked "that the fantastic advances in the field of electronic communication constitute a great danger to the privacy of the individual; that indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments; and that these considerations impose a heavier responsibility on this Court in its supervision of the fairness of procedures in the federal court system." *Id*. at 441. These "fantastic advances" continue, and are giving the police access to surveillance techniques that are ever cheaper and ever more effective. Remember the beeper in *Knotts*? "Officers installed a beeper inside a five-gallon container of chloroform . . . [and] followed the car

in which the chloroform had been placed, maintaining contact by using both visual surveillance and a monitor which received the signals sent from the beeper." *United States v. Knotts*, *supra*, 460 U.S. at 278. That was only a modest improvement over following a car by means of unaided human vision.

Technological progress poses a threat to privacy by enabling an extent of surveillance that in earlier times would have been prohibitively expensive. Whether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this case. So far as appears, the police of Polk County (a rural county in northwestern Wisconsin), where the events of this case unfolded, are not engaged in mass surveillance. They do GPS tracking only when they have a suspect in their sights. They had, of course, abundant grounds for suspecting the defendant. Should government someday decide to institute programs of mass surveillance of vehicular movements, it will be time enough to decide whether the Fourth Amendment should be interpreted to treat such surveillance as a search. Cf. *Zurcher v. Stanford Daily*, *supra*, 436 U.S. at 566.

AFFIRMED.

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*