BEALES, J., with whom HALEY, J.,
joins, concurring.
While I agree that this Court should affirm appellant’s conviction, I believe that the best and narrowest ground for resolving this appeal is to address the Fourth Amendment issue that was presented to the trial court and to this Court on appeal. This Fourth Amendment issue was extensively briefed and argued by the parties in the trial court, and it was the issue that the trial court actually addressed in denying appellant’s motion to suppress. Furthermore, this same Fourth Amendment issue was the issue presented to this Court in appellant’s petition for appeal, and it was the subject of the questions presented granted by this Court.[9] On appellate review in this Court, it is clear that no Fourth Amendment violation occurred under the particular facts of this case (and no one has ever argued that any Virginia statute was violated here either).[10] Accordingly, I would squarely address *120 the Fourth Amendment issue that is before this Court in this case, and I would affirm the trial court on this Fourth Amendment basis as argued by the parties—not on an alternative basis.
I. Best and Narrowest Ground for Affirming
If this Court is confronted with more than one reason to affirm a trial court’s decision, then we should, of course, affirm that decision on the best and narrowest ground available from the record. Podracky v. Commonwealth, 52 Va.App. 130, 134, 662 S.E.2d 81, 84 (2008). Thus, in appropriate cases, appellate courts can and should affirm a trial court’s ruling on a different basis than the basis used by the trial court—provided that this alternative ground is the best and narrowest one for affirming the trial court’s decision.
In some cases, such as the case today before this Court, the best and narrowest ground for affirming the denial of a suppression motion is to hold that the trial court simply did not err in its ruling on the substantive constitutional issue. It is not necessary, on appeal in such a case, to avoid addressing the substantive constitutional issue altogether and instead reach the conclusion that the exclusionary rule is inapplicable. See, e.g., United States v. Pineda-Chinchilla, 712 F.2d 942, 944 (5th Cir.1983). No controlling authority holds or even suggests that this Court must consider the exclusionary rule when seeking to determine the best and narrowest ground for affirmance—especially when it is clear that the trial court’s ruling on the substantive constitutional issue was not erroneous. See Armstead v. Commonwealth, 56 Va.App. 569, 576, 695 S.E.2d 561, 564 (2010) (“We do not address the exclusionary rule issue because ‘the best and narrowest ground available’ for decision is the first premise of Armstead’s argument—that the trial court’s decision is inconsistent with [Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)]. We do not believe it is.” (footnotes and citation omitted)).[11]
*121 Here, “the best and narrowest ground,” id., for resolving this appeal is to address the Fourth Amendment issue that was actually presented to the trial court and that was presented to this Court on appeal. The Fourth Amendment principles pertinent to this case are well established. The trial court based its ruling on these Fourth Amendment principles. The questions presented raised by appellant and granted by this Court were based on these Fourth Amendment principles. Addressing these Fourth Amendment principles on appellate review, it is clear that appellant’s Fourth Amendment rights were not violated, given the facts in this particular case. Therefore, in this case, it is certainly appropriate to apply these well-established Fourth Amendment principles to the very specific factual situation presented here.
II. Fourth Amendment Analysis
I certainly acknowledge up front that there are some very legitimate concerns arising from the development and use of sophisticated technology such as GPS devices. See, e.g., United States v. Knotts, 460 U.S. 276, 284, 103 S.Ct. 1081, 1086, 75 L.Ed.2d 55 (1983); United States v. Maynard, 615 F.3d 544, 565 (D.C.Cir.2010); United States v. Garcia, 474 F.3d 994, 998 (7th Cir.2007). The government could potentially abuse this technology in an Orwellian manner by truly invading the *122 private lives of individuals without any constitutional justification.
Although I certainly share these concerns about the potential use of Orwellian practices by the state that would abuse the privacy rights of the citizenry, the particular facts of this specific case simply do not even raise such concerns. See Dow Chemical Co. v. United States, 476 U.S. 227, 239 n. 5, 106 S.Ct. 1819, 1827 n. 5, 90 L.Ed.2d 226 (1986) (“Fourth Amendment cases must be decided on the facts of each case,” not based on generalizations.). As Judge Posner wrote on behalf of the Seventh Circuit in Garcia, affirming the use of GPS tracking in that case, “[wjhether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this case.” 474 F.3d at 998. Similarly, this Court need not tackle such “momentous issues” in this case. Here, given the specific facts of this case, this appellant’s Fourth Amendment rights clearly were not violated.
“The Fourth Amendment of the United States Constitution provides that ‘the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.’ ” Gibson v. Commonwealth, 50 Va.App. 744, 749, 653 S.E.2d 626, 628 (2007) (quoting U.S. Const, amend. IV). Thus, “[t]he Fourth Amendment protects the privacy and security of individuals against arbitrary searches and seizures by governmental officials.” Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 144 (2008) (citing Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730-31, 18 L.Ed.2d 930 (1967); Brown v. Commonwealth, 270 Va. 414, 418, 620 S.E.2d 760, 762 (2005)). “The key inquiry regarding whether the [Fourth] Amendment affords protection is “whether a person has a constitutionally protected reasonable expectation of privacy.’ ” Gibson, 50 Va.App. at 749, 653 S.E.2d at 628 (quoting Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740-41, 80 L.Ed.2d 214 (1984)); see United States v. Knights, 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001) (noting *123 that “[t]he touchstone of the Fourth Amendment is reasonableness”). The United States Supreme Court has made it clear that a constitutionally protected reasonable expectation of privacy exists under the Fourth Amendment only if a person has a subjective expectation of privacy and if society recognizes that subjective expectation of privacy as reasonable. Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042-43, 150 L.Ed.2d 94 (2001); Oliver, 466 U.S. at 177, 104 S.Ct. at 1740-41.
“[T]he Fourth Amendment protects people, not places.” Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).[12] This case does not concern a search and seizure of appellant’s person, or the recording of any of appellant’s private conversations. This case does not involve appellant’s home or even appellant’s own property. Especially as this case concerns a van owned and regulated by appellant’s employer, the circumstances in this case certainly did not violate appellant’s own privacy protections under the Fourth Amendment.
A. Placement of GPS Device
In this case, the police installed a GPS device in the bumper of a van that was owned by appellant’s employer—it is undisputed that the van was not appellant’s own vehicle. Appellant used this work van with his employer’s consent, and the employer allowed him to use it only for work and to travel to appointments with his probation officer when time would not permit him to go home first and use his own vehicle. In short, appellant’s employer clearly regulated the use of this work van, and it forbade him from using the van for almost all personal activities.
*124 Furthermore, the employer’s van used by appellant in this case was parked on a public street when the police attached the GPS device to the van. The device was placed in the bumper of the van; thus, attaching the device did not require opening the van’s passenger compartment or accessing its battery power. Given these circumstances (and for the reasons that follow), no Fourth Amendment violation resulted from the placement of the GPS device on the employer’s van in this manner.
The placement of the GPS device in the bumper of appellant’s employer’s van is similar in some ways to the situation addressed by the United States Supreme Court in United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). In Karo, tracking devices were placed in containers that were then purchased by Karo, who in turn placed the containers in his vehicle. Id. at 707, 104 S.Ct. at 3299. The Supreme Court found that the transfer to Karo of the containers with the hidden tracking devices did not infringe on his privacy, explaining:
[The transfer] conveyed no information that Karo wished to keep private, for it conveyed no information at all. To be sure, it created a potential for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.
Id. at 712, 104 S.Ct. at 3302 (emphasis added). Similarly, in this case, the installation of the GPS device in the bumper of appellant’s employer’s van did not relay any information— private or otherwise, from appellant or from anyone else—to the police. Therefore, the police did not infringe appellant’s privacy by installing the device in the work van because nothing private was actually exposed by the placement.
In addition, placing the GPS device in the bumper of his employer’s van, while that van was parked on a public street, did not expose anything that was not already visible and freely accessible to the public. See United States v. Pineda-Moreno, 591 F.3d 1212, 1215 (“If a neighborhood child had walked *125 up Pineda-Moreno’s driveway and crawled under his Jeep to retrieve a lost ball or runaway cat, Pineda-Moreno would have no grounds to complain.”), reh’g en banc denied, 617 F.3d 1120 (9th Cir.2010); United States v. McIver, 186 F.3d 1119, 1127 (9th Cir.1999) (finding Mclver did not prove that “he intended to preserve the undercarriage” of the vehicle “from inspection by others” and that “the officers did not pry into a hidden or enclosed area” when they installed a GPS device on the vehicle); United States v. Rascon-Ortiz, 994 F.2d 749, 754-55 (10th Cir.1993) (finding that the agent did not violate a defendant’s privacy when he examined the undercarriage of a vehicle because “[t]he undercarriage is part of the car’s exteri- or, and as such, is not afforded a reasonable expectation of privacy” and because the agent did not “disturb[ ] or move[ ] parts of the car in order to facilitate his observations”).[13]
The United States Supreme Court has noted that “[t]he public is fully aware that it is accorded less privacy in its automobiles” because there is a “compelling governmental need” to regulate motor vehicles. California v. Carney, 471 U.S. 386, 392, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985). Accordingly, “warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not.” South Dakota v. Opperman, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). This case presents even less of a privacy interest than the situations addressed by the Supreme Court in Carney and Opperman. Here, the GPS device was placed inside the bumper of the work van that appellant’s employer allowed him to drive—not inside the passenger compartment or in the glove compartment, where personal articles are often kept. The bumper of appellant’s employer’s van, parked on a public street, certainly does not “provide the setting for those intimate activities that *126 the [Fourth] Amendment is intended to shelter from government interference or surveillance.” Oliver, 466 U.S. at 179, 104 S.Ct. at 1741.
Based on the specific facts in this case, the police did not violate appellant’s reasonable expectation of privacy when they installed the GPS device in the bumper of his employer’s work van. The employer’s van was not appellant’s personal property, and it was not parked on his property. Although appellant drove the van, he was not in control of where the van was supposed to go. Instead, appellant’s employer told him where he could drive the van. Thus, the employer strictly controlled the van’s movements and directed appellant where he was supposed to be going with it.
Furthermore, appellant did nothing to remove his employer’s van from the public’s view—it was parked on the street without a cover, and nothing prevented the public from observing the van. In fact, appellant’s employer clearly wanted the public to notice this van—the business’ logo and contact information were publicized on the side of the van, obviously intending to attract attention.
Moreover, the installation of the GPS device did not require that the police open the doors or the hood of the employer’s van, and the police did not connect the device to any operational part of the vehicle. Compare Karo, 468 U.S. at 707, 104 S.Ct. at 3299 (finding “no Fourth Amendment interest of Karo or of any other respondent was infringed by the installation of the beeper” which merely occupied space in a can purchased by Karo) with Commonwealth v. Connolly, 454 Mass. 808, 913 N.E.2d 356, 361-62, 369 (2009) (finding that installation of a GPS device by attaching it to the car’s battery violated the Massachusetts Declaration of Rights). Instead, the GPS device used its own power source. See Garcia, 474 F.3d at 997. No evidence suggested that the device affected the performance of the employer’s van or impeded in any way appellant’s ability to use the van for his job.
*127 Given all of these circumstances, I would find that the installation of the GPS device in this particular case did not violate appellant’s Fourth Amendment rights.
B. GPS Tracking
I would also find that appellant’s Fourth Amendment privacy rights were not violated when the police used the GPS device to track appellant’s movements while appellant was driving on the public streets[14] in his employer’s van, especially given his movements in the van were already regulated by the employer, as the van’s owner.
The United States Supreme Court has repeatedly held that society does not recognize an expectation of privacy in the movement of vehicles on public streets. Knotts, 460 U.S. at 281, 103 S.Ct. at 1085 (“A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.”); Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (“A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.”); see also Carney, 471 U.S. at 392, 105 S.Ct. at 2069-70 (“The public is fully aware that it is accorded less privacy in its automobiles.... ”); Rakas v. Illinois, 439 U.S. 128, 148, 99 S.Ct. 421, 432-33, 58 L.Ed.2d 387 (1978) (“We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes.”). Here, appellant drove his employer’s work van on public streets.
*128 Given the limited expectation of privacy in a vehicle’s movement on public roads, the particular facts here make it very clear that the use of GPS tracking in this case did not violate appellant’s privacy rights. First, in this case, the police used the GPS device to track appellant’s movements as he drove his employer’s work van—not as he drove his own vehicle. The movements of this van were already being “tracked” by its owner, appellant’s employer, who regulated appellant’s use of its work van. Therefore, this case is unlike Maynard, 615 F.3d at 555, where the police tracked the defendant’s unrestricted driving of his personal vehicle for a number of weeks. This case is also unlike Connolly, 454 Mass, at 810, 913 N.E.2d at 361, and State v. Weaver, 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195, 1195 (2009),[15] where the police tracked the personal vehicles of the suspects. In those three cases, unlike here, no one regulated the defendants’ use of their vehicles.
Here, on the other hand, appellant’s employer limited appellant’s use of the work van. Appellant did not have permission to drive the van wherever he liked or to do whatever he wanted with it. He could not sell it or rent it to other people. He could not drive it for personal errands. As the prosecutor noted in the trial court, appellant was not even permitted to use his employer’s van “to stop on the way home from work for grocery shopping.” Appellant was only allowed to drive the van to the places where his employer told him to take it and to pre-approved probation meetings. Therefore, appel *129 lant’s movements with the work van were already essentially “under surveillance” by his employer.
Indeed, this case concerns only appellant’s movements while he drove his employer’s work van. As the trial court found, the police “didn’t put the device on him; they put it on [the employer’s] van.” (Emphasis added). This situation is simply very different than the situation in Maynard. In that case, over the course of a month, the authorities tracked all of that defendant’s unregulated and otherwise unmonitored movements in his own vehicle. Maynard, 615 F.3d at 558. In this case, over a much shorter period of time, GPS tracking was only used to track appellant’s movements in his employer’s van—and appellant could not have had a reasonable expectation of privacy in his movements in his employer’s van because he understood that his movements in this van were already supposed to be regulated by and revealed to his employer. See Smith v. Maryland, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 2581-82, 61 L.Ed.2d 220 (1979) (“This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.”).
In addition, the employer’s van in this case was designed to attract attention, unlike the personal vehicles in Maynard, 615 F.3d at 555, Connolly, 454 Mass. at 810, 913 N.E.2d at 361, and Weaver, 882 N.Y.S.2d 357, 909 N.E.2d at 1195.[16] In those cases, the vehicles were typical cars or vans—private vehicles *130 belonging to the suspects being tracked. Here, the vehicle was a commercial van owned by appellant’s employer. The employer had placed its logo and business information on the side of the van—essentially advertising the business as appellant drove the employer’s work van on the streets and parked it in public places. Clearly, appellant’s employer wanted people to notice the van’s movements. Appellant, as the driver of the van and an employee, knew that this conspicuous advertising had been placed on the work van.
Appellant simply cannot claim that he has a privacy expectation in the movements of his employer’s van as it moves on the public streets. Both the appearance of the van and his employer’s control of the van establish that appellant’s movements with the van were already exposed while he drove it on the public streets and were certainly not kept private. Moreover, the police in this case were investigating a continuing series of sexual assaults, and appellant does not now contest the trial court’s finding that the police had reasonable, articulable suspicion to consider him a suspect in these offenses. The police used the GPS device to crack this case by tracking appellant on the public roadways—which they could, of course, do in person any day of the week at any hour without obtaining a warrant—and the police tracked appellant’s movements with the GPS device only while he drove his employer’s vehicle. Under these circumstances, the use of GPS tracking in this case was certainly not arbitrary—and was not unconstitutional. See Knights, 534 U.S. at 118, 122 S.Ct. at 590-91; Camara, 387 U.S. at 528, 87 S.Ct. at 1730-31.
Consequently, the use of GPS tracking in this case did not violate appellant’s Fourth Amendment rights.
III. Conclusion
In my view, the best and narrowest ground for deciding this case is to hold that the trial court did not err in denying *131 appellant’s motion to suppress because the installation and use of the GPS device here simply did not violate the Fourth Amendment.
I recognize the potential for abuses of GPS technology by the government, but a multitude of circumstances in this case establish that appellant’s privacy rights simply were not violated:
• the fact that the van was owned by appellant’s employer— not appellant himself[17];
• the fact that the employer told appellant where to drive its van and otherwise regulated his use of the van;
• the fact that the van was intended by its owner to be seen—as a conspicuous form of advertising for appellant’s employer—as it was being driven on the public streets;
• the fact—not even contested on appeal—that the police had reasonable, articulable suspicion that appellant had recently committed a series of sexual assaults (similar to crimes for which he had been previously convicted) and that he was continuing to assault women;
• the fact that the employer’s van was parked on a public street when the GPS device was installed;
• the fact that the GPS device was not connected to the employer’s van’s mechanical workings, such as its battery;
• the fact that the device was placed in the employer’s van’s bumper—not inside its passenger compartment; and
• the fact that the employer’s van’s movements were tracked while it was being driven on the public streets, where the police could, of course, have followed appellant in person at any time without obtaining a warrant.
Given all of these circumstances, which certainly do not establish any kind of arbitrary “intrus[ion] upon an individual’s privacy,” Wyoming v. Houghton, 526 U.S. 295, 300, 119 *132 S.Ct. 1297, 1300, 143 L.Ed.2d 408 (1999), I believe it is unnecessary to decide this case by holding that the exclusionary rule—a remedy for a Fourth Amendment violation—is inapplicable in this case. See Armstead, 56 Va.App. at 576, 695 S.E.2d at 564.
Accordingly, I would squarely address the Fourth Amendment issue that was the subject of appellant’s questions presented in this Court and that was the issue upon which the appeal was granted by this Court—the same issue that was also the focus of argument in the trial court and on which the trial court made its decision. On this Fourth Amendment issue, it is clear that the trial court committed no error. Therefore, while I agree with the majority that the trial court’s conviction of appellant for abduction with intent to defile should be affirmed, I would instead do so by addressing the questions presented to, and granted by, this Court—and by holding that there was no Fourth Amendment violation under the specific facts of this particular case.

. Appellant raised two related issues before this Court, which were the same issues he raised at trial—whether his Fourth Amendment rights were violated by putting a GPS device in the bumper of his work van or by using a GPS device to track his movements in the work van. This Court granted appellant’s petition for appeal on these issues. By basing our ruling on the Fourth Amendment, we would be affirming the trial court on the same grounds on which the trial court itself based its denial of appellant's motion to suppress.

. Appellant never argues that there is any Virginia statute requiring that a warrant be issued before a GPS device may be placed in the bumper of his work van. The only question on appeal before this Court in this case is whether the Fourth Amendment prohibits the use of a GPS device on a person’s work vehicle (which is owned by the person’s employer) when there is reasonable, articulable suspicion that this person has committed or is about to commit a crime—or, as here, a continuing series of crimes.

. Like the majority, I do not tend to believe that the testimony of the police officers describing appellant’s actions on February 6, 2008, *121 which appellant sought to suppress as fruit of the poisonous tree, is subject to the exclusionary rule. However, an appellate court need not actually address the exclusionary rule on appeal, if the better and narrower ground for affirmance is to address the substantive Fourth Amendment issue. See Armstead, 56 Va.App. at 576, 695 S.E.2d at 564. In addition, a significant function of an appellate court is to "to provide guidance to trial courts” on substantive legal issues, unless doing so would result in an advisory opinion. See Angel v. Commonwealth, 281 Va. 248, 273 n. 6, 704 S.E.2d 386, 401 n. 6 (2011) (internal quotation marks omitted); see also United States v. Cruz, 581 F.2d 535, 541 (5th Cir.1978) (en banc) ("The dual function of appellate courts is to review the record of trials for alleged error and, incident thereto, to announce and apply principled rules for the guidance of trial courts, lawyers, and litigants.”), overruled on other grounds by United States v. Causey, 834 F.2d 1179, 1184 (5th Cir.1987). Here, applying the Fourth Amendment principles considered by the trial court to the facts of this case certainly would not be providing an advisory opinion.

. Although the actual text (as opposed to the footnote) of Judge Humphreys’s concurrence appears to suggest that the United States Supreme Court should overturn (or significantly alter) decades of Fourth Amendment precedent from that Court, other federal appellate courts, and the Virginia Supreme Court, the parties here agree that the United States Supreme Court's decisions in Katz and its progeny are the controlling cases on the Fourth Amendment issues raised in this appeal.

. The fact that the police had to touch the work van to install the GPS does not mean that the installation violated a reasonable expectation of privacy in some way. See Cardwell v. Lewis, 417 U.S. 583, 591, 94 S.Ct. 2464, 2468-70, 41 L.Ed.2d 325 (1974) (finding that a defendant’s privacy rights were not violated when the police examined a tire and took a paint sample from his car as it was in a public parking lot).

. Appellant also claims that his Fourth Amendment rights were violated when the police tracked the van to his employer’s place of business, which was in a business park marked "private” property. However, as the trial court found, appellant presented no evidence that appellant had any expectation of privacy at his employer’s warehouse—especially regarding the movement of the van, which his employer owned. The police did not track the employer's van onto any property owned by appellant or to any other private place where appellant would have a reasonable expectation of privacy. As a result, I agree with the trial court that appellant’s privacy rights were not violated when the GPS device tracked the employer’s van to the employer’s warehouse. See Katz, 389 U.S. at 351, 88 S.Ct. at 511.

. Both the Massachusetts and the New York courts have found that GPS tracking specifically violated their state constitutions, not necessarily the federal constitution. See Connolly, 454 Mass. at 808, 913 N.E.2d at 369; Weaver, 882 N.Y.S.2d 357, 909 N.E.2d at 1201-03. The privacy rights afforded by the Massachusetts and New York state constitutions are broader than those afforded under the federal constitution. Commonwealth v. Balicki, 436 Mass. 1, 762 N.E.2d 290, 299 n. 11 (2002); Weaver, 882 N.Y.S.2d 357, 909 N.E.2d at 1202. In Virginia, on the other hand, Article I, Section 10, of our state constitution is simply coextensive with the Fourth Amendment of the United States Constitution. Lowe v. Commonwealth, 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985) (citing A. Howard, I Commentaries on the Constitution of Virginia 182 (1974)).

. Moreover, the manner in which appellant drove his employer’s van certainly attracted attention. Tracking the movements of the employer’s van using GPS technology, police officers observed (in real time) how the employer's van was being driven in and out of various neighborhoods on the afternoon of February 5, 2008. This pattern of driving concerned the officers, who characterized the pattern as "hunting" behavior. Detective Kirk, one of the detectives who observed the GPS data, testified, "What I was observing was the vehicle driving on the same streets, driving at a slow rate of speed. That concerned me from my experience of working sex-crimes cases. It is often a pattern that is shown by sex offenders, rapists.” "[W]hoever is driving that vehicle should be looked at," Detective Kirk recalled saying at that time, and the other officers assigned to the case agreed with his suggestion. That night, another sexual assault occurred—and the GPS data indicated that the employer’s van was parked within two blocks of *130 the scene of the attack at the time it occurred. The police then began following appellant themselves on February 6, 2008—the next day.

. The employer has never expressed any concern about the police's placement of the GPS device on his van—not when he testified before the trial court and apparently not at any other time.