2015 IL App (1st) 130145
No. 1-13-0145
September 22, 2015

SECOND DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | | Appeal from the Circuit Court |
| ) | | Of Cook County. |
| Plaintiff-Appellant, ) | | |
| ) | | |
| v. ) | | No. 11 CR 12947 |
| ) | | |
| JUAN BRAVO, ) | | The Honorable |
| ) | | Mary M. Brosnahan, |
| Defendant-Appellee. ) | | Judge Presiding. |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justice Simon concurred in the judgment and opinion.
Justice Liu specially concurred, with opinion.

**OPINION**

¶ 1     The State appeals from an order granting Juan Bravo's motion to quash his arrest and suppress the evidence collected at the time of the arrest. The trial court found that the State failed to meet its burden of showing that police acted in good faith when they installed a GPS device on Bravo's car without judicial authorization. We affirm.

¶ 2                                    BACKGROUND

¶ 3        On April 5, 2011, Mike McClarence, a special agent working for the Drug Enforcement Agency (DEA), watched Bravo get out of a Toyota and into a Jeep driven by Juan Soto. Soto drove the Jeep to a parking lot. Rodrigo Martinez Figueroa drove up in a sedan. Martinez got into the Jeep, carrying a diaper bag, and half a minute later, he returned to the sedan, still holding the diaper bag. Martinez and Soto started to drive off in different directions.

¶ 4        Following McClarence's instructions, Keith Bakewell, also a DEA agent, activated his siren and directed Soto to stop the Jeep. Bakewell saw several bundles wrapped in cellophane in the Jeep's back seat. Bakewell arrested Bravo. Prosecutors charged Bravo with possessing marijuana with intent to deliver.

¶ 5        Bravo moved to quash the arrest and suppress the evidence seized at the time of his arrest. He alleged that on or before March 3, 2011, DEA agents, acting without judicial authorization, installed on Bravo's Toyota a GPS tracking device. In response, the State argued only that the agents acted in good faith when they installed the device.

¶ 6        At the hearing on the motion both McClarence and Bakewell guessed that they first installed a GPS device on Bravo's Toyota about a month before the arrest. Because of the limited lives of their batteries, they needed to install new GPS devices on Bravo's Toyota several times during the period of surveillance. McClarence made the decision to install the GPS device. He did not consult any attorney about the installation, and he did not seek judicial authorization for the installation.

¶ 7    McClarence testified that while he was following Bravo on April 5, 2011, he used the GPS device to locate Bravo each time McClarence lost track of him. McClarence agreed that he "relied on data that was disseminated from the tracking device in order to find Mr. Bravo on April the 5th." McClarence testified that he told Bakewell to stop Soto because McClarence believed Martinez and Bravo had just completed a narcotics transaction in the parking lot. McClarence explained, "we actually were told that [Bravo] was a cocaine trafficker." Neither the prosecutor nor defense counsel asked McClarence to elaborate on the source of the information. McClarence and Bakewell both admitted that during the period of surveillance they had not seen any evidence that Bravo engaged in other narcotics transactions.

¶ 8    The prosecutor argued that the agents acted in accord with applicable case law. The prosecutor added, "there was enough evidence that was elicited during the hearing to give the agents reasonable cause to place the tracker on the defendant's vehicle. And the officer testified that they did have information that the defendant was involved in narcotics activities."

¶ 9    The judge said,

> "[There] was not enough information presented to me that would cause me to
> be able to say that when the GPS tracker went on, really any one of those ***
> times prior to the date of the arrest, that there was a reasonable suspicion that
> [Bravo] was engaged in criminal activity. I just have one conclusion in the

record ***, which is we were told that he was a cocaine trafficker, period, with no other backdrop to that statement.

So based upon that, I cannot find that the time they put the tracker on *** that they did, in fact, have that reasonable suspicion that was necessary."

¶ 10    The judge granted the motion to quash the arrest and suppress the evidence.

¶ 11    The prosecutor filed a motion to reconsider the decision to suppress the evidence. At the oral argument on the motion, the prosecutor introduced a new argument. He said, "there still were multiple intervening factors that attenuated anything that happened," and that the agents would have discovered the marijuana without use of the GPS device. The court denied the motion for reconsideration. The prosecutor filed a certificate of substantial impairment and a notice of appeal.

¶ 12                                    ANALYSIS

¶ 13    The State argues on appeal that the agents acted in good faith when they installed the GPS devices, and that the trial court should have granted the motion for reconsideration because the agents did not derive the suppressed evidence from the use of the GPS device.

¶ 14                                   Good Faith

¶ 15    On appeal from a ruling on a motion to suppress evidence, "Factual findings made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. *** If we accept the findings of fact made by the circuit court, we then review *de novo* whether suppression is warranted under those facts." *People v. Gherna*, 203 Ill. 2d 165 (2003). The State admits that the agents committed an illegal search when they attached

a GPS device to Bravo's car. See *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012). To justify the search, the State claims that the agents acted in accord with *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007).

¶ 16    In *Garcia*, a known user of methamphetamine reported to police in Polk County, Wisconsin, that Garcia had brought the user meth and told her he wanted to start making meth again. Police found that a store's security cameras captured images of Garcia buying ingredients manufacturers can use to make meth. Garcia had previously served time for meth offenses. Police decided to attach a GPS device to Garcia's car. Using the device, police soon found Garcia with equipment and materials used to make meth. Garcia moved to suppress the evidence. The *Garcia* court found that the use of the GPS device under the circumstances of that case did not violate the fourth amendment. *Garcia*, 474 F.3d at 996-98.

¶ 17    The United States Supreme Court rejected the reasoning of *Garcia*. *Jones*, 565 U.S. at ___, 132 S. Ct. at 949. The *Jones* Court held that the installation of a GPS device without a warrant constitutes a search in violation of the subject's fourth amendment rights. *Jones*, 565 U.S. at ___, 132 S. Ct. at 949. However, the Illinois Supreme Court subsequently held that courts need not always suppress the evidence discovered through the warrantless use of GPS device, if the officers acted in good faith when they attached the device. *People v. LeFlore*, 2015 IL 116799.

¶ 18    In *LeFlore*, Aurora police received a tip over the Crime Stoppers hotline that LeFlore had committed several burglaries and brought the proceeds to the apartment complex where he

lived. The police found that LeFlore, on mandatory supervised release from prison, had recently fled from police officers. After the publication of *Garcia*, and before *Jones*, police placed a GPS device on the car LeFlore had driven. The device helped them link LeFlore to a robbery of a gas station within a day after police installed the device. The *LeFlore* court found that, for Aurora police, *Garcia* was "a case directly on point" with the situation in *LeFlore*, and Aurora police followed the *Garcia* decision "to the letter." *LeFlore*, 2015 IL 116799, ¶ 60. Because police did not have the guidance of *Jones*, they relied in good faith on *Garcia* when they attached the GPS device to LeFlore's car, and therefore the trial court correctly denied the motion to suppress the evidence collected with the help of the GPS device. *LeFlore*, 2015 IL 116799, ¶ 71.

¶ 19    Thus, in *Garcia* and *LeFlore*, police installed GPS devices and tracked the defendants very briefly, and, in both cases, prosecutors showed the court that before installation of the devices, police had reasonable grounds to suspect the defendants of criminal conduct. The *Garcia* court expressly limited its holding, noting that it did not decide whether tracking cars for more than a few days would violate the constitution. *Garcia*, 474 F.3d at 998. The *Garcia* court also expressly distinguished the case from cases where the State lacked grounds for suspecting the defendant of criminal acts when police attached the GPS device to the defendant's car. *Garcia*, 474 F.3d at 998. No fair reading of *Garcia* can stretch the reasoning to permit the installation of a GPS device and the use of the device to track a target for a month, without grounds for suspecting the target of criminal activity.

¶ 20    Here, the prosecutor argued that the agents acted in good faith because they "were told that [Bravo] was a cocaine trafficker." The prosecutor did not present evidence which could form the basis for an informed assessment of the reliability of the information on which the agents acted. See *People v. Corral*, 147 Ill. App. 3d 668, 672 (1986). The prosecutor did not present any evidence that would excuse the use of the GPS device for a month, based on *Garcia*. Because the agents, who did not ask any attorney for advice on the meaning of *Garcia* or its application to Bravo's case, installed a GPS device and used it for a month, without any showing of grounds to suspect Bravo of criminal activity, the court found that the State failed to meet its burden of proving that the agents acted in good faith in reliance on *Garcia*. See *People v. Ortiz*, 317 Ill. App. 3d 212, 220 (2000). We hold that the trial court's findings were not against the manifest weight of the evidence and the findings do not require a reversal of the trial court's order suppressing the evidence.

¶ 21                                Motion for Reconsideration

¶ 22    Next, the State argues that the court should have granted its motion to reconsider the ruling on the motion to suppress. The State argues that it would have obtained the evidence without the use of the GPS device. We will reverse the trial court's ruling on a motion to reconsider only if the court abused its discretion. *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997).

¶ 23    "The purpose of a motion to reconsider is to bring to the court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence that was not available at the time of the hearing." *In re Ashley F.*, 265 Ill. App. 3d 419, 426

(1994). The State did not seek reconsideration on any of the permissible grounds. See *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989). Instead, the State sought reconsideration so it could raise a new argument based on law that predated the initial hearing, and based on evidence available before the initial hearing. We note that McClarence testified that he "relied on data that was disseminated from the tracking device in order to find Mr. Bravo on April the 5th." The trial court did not abuse its discretion when it denied the State's motion for reconsideration based on law and evidence available before the initial hearing. See *Ashley F.*, 265 Ill. App. 3d at 426; *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987 (1987).

¶ 24                                           CONCLUSION

¶ 25        The reasoning of *Garcia* cannot excuse the agents' use of GPS devices on Bravo's car for several weeks, especially because the prosecutor presented no adequate grounds to suspect that Bravo had engaged in criminal activity. Thus, the trial court's findings were not manifestly erroneous and it correctly ruled that the State failed to meet its burden of proving a justification for the violation of Bravo's fourth amendment rights. The trial court also correctly denied the motion for reconsideration of the ruling, where the State sought to use the motion improperly to make a new argument based on law and evidence available before the initial hearing on the motion to suppress. Accordingly, we affirm the trial court's judgment.

¶ 26        Affirmed.

¶ 27        JUSTICE LIU, specially concurring.

¶ 28    I join the majority in affirming the trial court's order granting defendant's motion to quash and suppress. I disagree, however, with a part of the majority's analysis and would affirm for a different reason. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995) (holding that a reviewing court may affirm on any grounds in the record, regardless of whether the trial court relied on the same grounds or whether its reasoning was correct).

¶ 29    The majority correctly notes that we need not suppress evidence recovered through the warrantless use of a GPS device if the evidence demonstrates that the government "acted in good faith when [it] attached the device." *Supra* ¶ 17. In *People v. LeFlore*, our supreme court specifically recognized that under the good-faith exception, " '[vehicle] searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule. ' " *LeFlore*, 2015 IL 116799, ¶ 27 (quoting *Davis v. United States*, 564 U.S. ___, ___, 131 S. Ct. 2419, 2423-24 (2011)). The majority concludes that suppression is warranted in this case because the DEA agents failed to show that they acted in good faith reliance based on *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007), when they used a GPS device to monitor defendant's vehicle for a month "without any showing of grounds to suspect [defendant] of criminal activity." *Supra* ¶ 20. I disagree with the majority's rationale. In my opinion, the applicability of the good-faith exception is not predicated on evidence that the agents had reasonable suspicion of criminal activity when they installed a "slap-on" GPS tracking device to defendant's vehicle and intermittently removed and reattached the device while using it to monitor the vehicle's movements. This was neither the holding of Garcia nor the reading of that case by our own supreme court in *LeFlore*.

¶ 30    In *Garcia*, the Seventh Circuit held that the government's warrantless installation of a GPS device on a defendant's vehicle and subsequent use of the device to track the vehicle's movement did not constitute a search under the fourth amendment. *Garcia*, 474 F.3d at 997 ("But GPS tracking is on the same side of the divide with the surveillance cameras and the satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking."); see also *LeFlore*, 2015 IL 116799, ¶ 56 (noting that *Garcia* held that attachment of a GPS device to a vehicle was not a search). Because such conduct did not amount to a search, reasonable suspicion was not required prior to the government's installation and use of a GPS tracking device. The State, therefore, was not required to show that the DEA agents had reasonable suspicion of any criminal activity by defendant when they attached the GPS device to defendant's vehicle and subsequently used the device to track defendant's whereabouts.

¶ 31    While I disagree with the majority that *Garcia* imposed a reasonable suspicion requirement on the government, I agree that suppression of the evidence is warranted because the State failed to show that the DEA agents reasonably relied on the *Garcia* decision as binding authority when they engaged in the installation and monitoring activity during their month-long surveillance of defendant. There was no consistent evidence presented by the State to show that either of the DEA agents involved in the GPS placement and monitoring activities consulted with a state or federal prosecutor about the applicability of *Garcia* or about any *other* federal or state decisions related to the installment and use of a GPS tracking device.

¶ 32       During the hearing on defendant's motion to suppress, Agent McClarence testified that he did not place the GPS device on defendant's vehicle. He admitted that he had no conversations with any prosecutors regarding the attachment and use of the device without a warrant. Agent McClarence merely testified that prior to the attachment of the device, he had relied on his "training," from which he understood that agents could legally attach a GPS device to a suspect's vehicle when the vehicle was on public property.

¶ 33       Agent Bakewell testified that he personally attached the GPS device to defendant's vehicle on a few occasions. He explained that he and other officers removed and reattached the device a couple of times in order to "charge it" or to "swap the battery." None of this activity, however, was documented and Agent Bakewell's testimony regarding his understanding of the law at the time the device was attached was, at best, vague.  During his direct examination, Bakewell testified as follows:

> "Q. And prior to attaching the device on Mr. Bravo's vehicle, had you discussed the use of that device with any attorney from the prosecutor's office?
>
> A. Yes, sir, we did.
>
> Q. And who did you discuss it with?
>
> A. It wasn't me myself that discussed it, but I believe it was Special Agent McClarence and I'm guessing, I'm assuming it would be ASA –
>
> Q. Had you at any time sought judicial approval to use the tracking device?
>
> A. No, sir."

During cross-examination, the State asked Agent Bakewell about the instructions and procedures that he relied on "as good law" when he placed the device on defendant's vehicle. Bakewell testified that he was aware they could attach the device to the vehicle only when the vehicle was on public property. Later, on redirect examination, Bakewell stated that he believed Agent McClarence had talked to a prosecutor about the requirement that the vehicle be in a public area when the device was attached.

¶ 34    Despite both agents' testimony about where the defendant's vehicle was required to be, i.e., on public property, at the time when the tracking device was attached, neither of them testified about conduct that suggested there was a reasonable reliance on any binding precedent related to the warrantless attachment of a GPS device to a suspect's automobile. A police officer's reliance on binding authority is "objectively reasonable" when his conduct " 'clearly falls well within rationale espoused in binding appellate precedent.' " *LeFlore*, 2015 IL 116799, ¶ 47 (quoting *United States v. Katzin*, 769 F.3d 163, 176 (3d Cir. 2014)). Here, we have no evidence to support a finding that the DEA agents' activities in this case fell within the contemplated scope of *Garcia*. *Garcia* simply did not reach, let alone settle, the question of whether the government's long-term employment of a GPS device on a suspect's vehicle over a 30-day period with no documentation of the tracking activity and the government's intermittent removal and reattachment of the device onto defendant's vehicle— would result in a search under the fourth amendment. *Garcia*, 474 F.3d at 998. If anything, the Seventh Circuit suggested that its treatment of the GPS tracking activity under the facts in

that case did not foreclose the possibility that other situations involving the government's use of a GPS device could result in a search:

"Whether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this case. So far as appears, the police of Polk County (a rural county in northwestern Wisconsin), where the events of this case unfolded, are not engaged in mass surveillance. They do GPS tracking only when they have a suspect in their sights. They had, of course, abundant grounds for suspecting the defendant. Should government someday decide to institute programs of mass surveillance of vehicular movements, it will be time enough to decide whether the Fourth Amendment should be interpreted to treat such surveillance as a search. [Citation.]" *Id*.

¶ 35      Because *Garcia* did not directly address the question of whether prolonged attachment and undocumented use of a GPS device for a month could be treated as a search, the State could not have shown objectively reasonable reliance on *Garcia* as controlling precedent for its GPS activity in this case. Consequently, the good-faith exception to the exclusionary rule does not apply here. For these reasons, I would affirm the circuit court's finding that suppression of the evidence was warranted.